FILED
NOV 1 3 2013
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | 4:13CR473 CDP/TIA |
| v. ) | |
| ) | |
| JALIL IBRAHIM AL-HANOOSH ) | |
| ) | |
| Defendant. ) | |

**Count I**
**(Wire Fraud)**

The Grand Jury charges that:

**A.   Introduction**

At all times relevant to this Indictment:

    1.    Jalil Ibrahim Al-Hanoosh (hereinafter "Jalil Al-Hanoosh") was a resident of the Eastern District of Missouri.

    2.    Babylon Grocery & Bakery was a grocery retailer located and doing business at 3803 Meremac Street, St. Louis, Missouri, in the Eastern District of Missouri.

Background of the Supplemental Nutrition Assistance Program (SNAP)

    3.    The United States Department of Agriculture (USDA), Food and Nutrition Service (FNS) is the federal Agency responsible for the administration and implementation of the Supplemental Nutrition Assistance Program (SNAP), a federal government program formerly known as the Food Stamp Program. The Food Stamp Program provided assistance to eligible recipients in the form of food stamp coupons. Food Stamp Program regulations were revised to permit states to issue food stamp benefits in the form of Electronic Benefit Transfer cards

1

(hereinafter EBT). The SNAP replaced the former Food Stamp Program and food stamp benefits. During all relevant times alleged herein, the Food Stamp Program and the SNAP helped qualifying individuals and families buy food.

4.  SNAP benefits are similar to United States currency in that SNAP recipients can purchase eligible food items from authorized grocery retailers up to the value of their SNAP benefits. Missouri residents applied for SNAP benefits on a State application form. The Missouri Department of Social Services (MO-DSS) Division of Family Services (DFS) determined SNAP eligibility and calculated benefits for qualifying individuals. Once eligibility was determined and benefits calculated, the MO-DSS-DFS issued SNAP recipients EBT cards that were similar to bank Automated Teller Machine (ATM) cards. EBT cards contained a unique Personal Identification Number (PIN) chosen by the respective SNAP recipient. EBT cards enabled the MO-DSS-DFS to deliver SNAP benefits to recipients through the use of electronic funds transfers much like debit card transactions. Each month, SNAP benefits were automatically credited to recipients' SNAP accounts. Missouri SNAP recipients used their SNAP benefits to purchase food by presenting their EBT card to USDA-FNS authorized grocery retailers.

5.  SNAP recipients were authorized to redeem benefits and use their EBT cards at authorized grocery retailers and they could purchase and receive only eligible food items. Recipients' monthly SNAP benefits were accessed and redeemed in real-time by using an EBT card at authorized grocery retailers.

6.  In Missouri, the SNAP was operated by and through the MO-DSS-FSD and under contract with e-Funds Corporation, located in Milwaukee, Wisconsin. E-Funds was a company that operated in the Eastern District of Missouri and elsewhere and acted as a provider of

electronic funds transfer services and provided electronic benefits processing services to government entities

7. Grocery retailers could only participate in the SNAP with the authorization of the USDA-FNS. Unauthorized grocery retailers could not redeem SNAP benefits or accept EBT cards. To participate in the SNAP, grocery retailers in Missouri were required to complete and submit Form FCS-252, a Food Stamp Program Application for Stores. Upon completion of the application process, if retailers met SNAP requirements, they were authorized to participate in, accept, and redeem SNAP benefits in exchange for the sale of eligible food items.

8. Authorized retailers could only accept and redeem SNAP benefits in exchange for the sale of eligible food items. Retailers were not permitted to exchange or redeem SNAP benefits for cash or any other ineligible items of value such as: merchandise, household goods, alcoholic beverages, tobacco products, cellular telephones, or other similar non-food items sold at grocery stores. Similarly, retailers were not permitted to sell food items "on credit" and subsequently redeem SNAP benefits by debiting customers' EBT cards and conducting a SNAP transaction at a later time.

9. During the authorization process, grocery retailers participating in SNAP were informed of the prohibitions against accepting SNAP benefits for anything other than eligible food items, and were notified of the sanctions for prohibited activities – including possible criminal prosecution. When participating in SNAP, authorized grocery retailers agreed to be held liable for all actions of their employees regarding the regulations governing SNAP, including illegal acts of fraud and SNAP (food stamp) trafficking.

10. Authorized grocery retailers were required to report to USDA-FNS any changes to the initial application; specifically changes in: the amount of food sales, the percentage of

food sales expected to be SNAP (food stamp) sales, inventory categories, actual inventory stock, the size of the store, as well as changes in any store location, name, or ownership.

11. SNAP benefits and EBT cards could only be processed through specifically provided Point of Sale (POS) terminals designed to accept SNAP-EBT cards. If authorized grocery retailers used devices for transactions other than SNAP redemptions, such as credit card and debit card transactions, retailers had to independently obtain those POS terminals from non-government processor or "third-party processor."

12. When SNAP recipients made purchases, the transaction occurred through the POS terminal. After "swiping" the EBT card or manually entering the transaction through the POS terminal, the SNAP recipient entered his or her personally selected PIN into the terminal's keypad. Once an EBT card was swiped, the POS terminal automatically transmitted the requested transaction information from the grocery retailer to e-Funds through telephone lines and wires. E-Funds then verified whether the amount of benefits requested for the transaction were available in the recipient's SNAP account. The SNAP transaction was then approved or rejected, and the result transmitted back to the POS terminal at the authorized grocery retailer. If the SNAP transaction was approved, e-Funds recorded the SNAP recipient account and EBT card number, the amount of the transaction, the date and time of the transaction, and then debited the recipient's SNAP account in real time. E-Funds also logged the amount of SNAP benefits remaining on the account. A two-sheet receipt was printed from the POS terminal, of which one copy was provided to the recipient and one copy kept as an official record for the authorized grocery retailer.

13. Authorized grocery retailers received credit for transactions by receiving money reimbursements from federal funding. SNAP benefit transactions by authorized grocery retailers

4

were processed and verified in Missouri by e-Funds. If a SNAP transaction in Missouri was approved, e-Funds processed the transaction, and processed the money transfer for the SNAP transaction and redemption into the financial account of the authorized grocery retailer who conducted the SNAP transaction. Money was transmitted via electronic funds transfers to a financial account designated by the authorized grocery retailer. The transfer of money in an account identified by an authorized retailer normally occurred within a twenty-four (24) hours of the SNAP transaction, except when a redemption occurred over a weekend. Weekend SNAP transactions normally settled within twenty-four (24) hours of the next business day following the weekend. Reimbursement payments made to authorized grocery retailers for SNAP transactions and redemptions were made from federally appropriated funds disbursed through the Federal Reserve banking system.

B. The Scheme

Background of Babylon Grocery & Bakery

1. Jalil al-Hanoosh, the defendant herein, made material misrepresentations of fact, both express and implied, to e-Funds and the USDA – FNS and further defrauded the USDA – FNS in two respects: (1) the defendant permitted customers to use SNAP benefits and EBT cards to facilitate and permit purchase of items that were not food and were not authorized by USDA – FNS, such as merchandise and cash; an, (2) the defendant permitted customers of Babylon Grocery & Bakery to purchase food "on credit" – in that customers received foods, then at some later time the defendant debited the customers' EBT card and SNAP benefits, not contemporaneous with the earlier food purchase and transfer.

2. The defendant further concealed material facts from the USDA-FNS in that he conducted SNAP transactions for ineligible, non-food items. When the defendant debited

5

customers' SNAP benefits in exchange for non-eligible food items, or as credit for earlier transfers, the defendant fraudulently misrepresented to the USDA-FNS that customers had purchased only eligible food items authorized pursuant to the SNAP.

3. On or about October 1, 2003, the defendant, Jalil al-Hanoosh, opened Babylon Grocery & Bakery located at 3803 Meramec Street, St. Louis, Missouri.

4. On or about October 1, 2003, a request for a Food Stamp Program Application for Stores Form 252 application was made for Babylon Grocery & Bakery to participate in the SNAP.

5. Between on or about October 1, 2003 and October 20, 2003, the defendant prepared and submitted or caused to be prepared and submitted, an FNS Form 252 application to the USDA-FNS; the application being received on or about October 28, 2003. The Form 252 application represented to USDA among other things, that: (1) the defendant was the sole proprietor and owner of the business; (2) that Babylon Grocery & Bakery had for the period of January 1, 2003, through September 30, 2003, reported to the Internal Revenue Service actual gross sales to date of $202,000.00 and that $110,000.00 worth of the reported gross sales were "eligible" retail food sales; and (3) that the defendant understood that as the sole owner of Babylon Grocery & Bakery and that he and any employees would follow all food stamp program, SNAP, regulations and accept responsibility for any violations.

6. Effective on or about November 13, 2003, Babylon Grocery & Bakery was authorized to participate in the USDA Food Stamp Program (later the SNAP). On or about November 13, 2003, the defendant was informed in a FNS authorization letter that that permitting the redemption of food stamp (SNAP) benefits for "credit" sales, and using food

stamp benefits (SNAP) for ineligible non-food items was prohibited and carried penalties associated with such violations.

7. On or about October 15, 2007, a government contractor visited Babylon Grocery & Bakery for their SNAP participation re-authorization and verified the information about the store previously provided to USDA.

8. Babylon Grocery & Bakery selected and used a government provided POS terminal for EBT SNAP redemptions and transactions with all transactions being processed by and through eFunds Corporation. SNAP transactions and reimbursements to Babylon Grocery & Bakery passed through a series of financial transactions ending at: U.S. Bank, Pulaski Bank and PNC Bank, all of which held financial accounts controlled by the defendant. SNAP transactions were processed and deposited into those respective banks and were identified as "eFunds" deposits.

9. The defendant opened an account at U.S. Bank for Babylon Grocery & Bakery ending in 6831, and indicated that he was the sole authorized owner, user, and signature authority for the account. Thereafter, from on or about January 2, 2008, through August 15, 2008, Babylon Grocery & Bakery received SNAP benefit redemptions that were deposited into the account ending in 6831.

10. On or about August 4, 2008 the defendant executed a signature card at U.S. Bank and opened an account for Babylon Grocery & Bakery ending in 1253, and indicated that he was the sole owner, user, and signature authority for the account. Thereafter, from on or about August 18, 2008, through January 15, 2010, Babylon Grocery & Bakery received SNAP benefit redemptions that were deposited into the account ending in 1253.

11. On or about October 9, 2009, the defendant executed a signature card at U.S. Bank and opened an account for Babylon Grocery & Bakery ending in 4472, and indicated that he was the sole owner, user, and signature authority for the account. Thereafter, from on or about January 20, 2010, through May 16, 2011, Babylon Grocery & Bakery received SNAP benefit redemptions that were deposited into the account ending in 4472.

12. On or about May 5, 2011, the defendant executed a signature card at Pulaski Bank, and opened an account for Babylon Grocery & Bakery ending in 1249, and indicated that he was the sole owner, user, and signature authority for the account. Thereafter, from on or about May 20, 2011, through September 27, 2011, Babylon Grocery & Bakery received SNAP benefit redemptions that were deposited in the account ending in 1249.

13. On or about September 3, 2011 the defendant executed a signature card at PNC Bank and opened an account for Babylon Grocery & Bakery ending in 5734, and indicated that he was the sole owner, user, and signature authority for the account. Thereafter, from on or about September 28, 2011, through on or about February 29, 2012, Babylon Grocery & Bakery received SNAP benefit redemptions that were deposited into the PNC Bank account ending in 5734.

14. The defendant reported to the City of St. Louis Earnings Tax Division on an Earnings Tax Return that from January 1, 2008, through December 31, 2008, Babylon Grocery had gross receipts (total gross sales) totaling $130,900.00. During that same period, Babylon Grocery & Bakery redeemed approximately $400,432.62 in EBT SNAP transactions.

15. The defendant reported to the City of St. Louis Earnings Tax Division on an Earnings Tax Return that from January 1, 2009, through December 31, 2009, Babylon Grocery

& Bakery had gross receipts (total gross sales) totaling $18,000.00. During that same period, Babylon Grocery & Bakery redeemed approximately $535,626.22 in EBT SNAP transactions.

16. The defendant reported to the City of St. Louis Earnings Tax Division on an Earnings Tax Return that from January 1, 2010, through December 31, 2010, Babylon Grocery & Bakery had gross receipts (total gross sales) totaling $104,800.00. During that same period, Babylon Grocery & Bakery redeemed approximately $502,577.71 in EBT SNAP transactions

17. The defendant reported to the City of St. Louis Earnings Tax Division on an Earnings Tax Return that from January 1, 2011, through December 31, 2011, Babylon Grocery & Bakery had gross receipts (total gross sales) totaling $590,696.00. During that same period, Babylon Grocery & Bakery redeemed approximately $555,036.09 in EBT SNAP transactions.

18. The defendant reported to the City of St. Louis Earnings Tax Division on an Earnings Tax Return that from January 1, 2012, through December 31, 2012, Babylon Grocery & Bakery had gross receipts (total gross sales) totaling $333,756.00. During the time periods of January 1, 2012, through May 30, 2012, and then November 1, 2012, through December 31, 2012, Babylon Grocery & Bakery redeemed approximately $265,750.23 in EBT SNAP transactions.

19. Effective October 21, 2013, USDA-FNS implemented a three year disqualification of Babylon Grocery & Bakery in part for the SNAP program violations described below, and other violations not charged in this indictment but known to the Grand Jury.

C. Wire Fraud

1. Beginning in or about January 2008, and continuing through on or about May 30, 2012, with the exact dates unknown, in the Eastern district of Missouri and elsewhere,

## JALIL AL-HANOOSH

the defendant herein, doing business as Babylon Grocery & Bakery, together with others known and unknown to the Grand Jury, knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from the USDA by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

2.  It was part of the scheme that between January 1, 2008, through May 30, 2012, the defendant used the Babylon Grocery & Bakery POS terminal to process SNAP transactions in which the defendant exchanged and redeemed, and caused to be exchanged and redeemed SNAP Benefits through e-Funds for transactions not authorized by law, knowing that such transactions, redemptions, and exchanges were illegal and prohibited under the federal Food Stamp Program and SNAP rules and regulations.

3.  It was further part of the scheme that the defendant fraudulently misrepresented that SNAP transactions he and others conducted at Babylon Grocery & Bakery were solely for the retail sale of eligible food items that were allowed for the purchase under the USDA Food Stamp Program and SNAP. The representations were fraudulent in that the Defendant permitted customers of Babylon Grocery & Bakery to use their EBT food stamp and SNAP benefits in manners other than for the purchase, redemption, and exchange of and for eligible food items.

4.  It was further part of the scheme that the defendant fraudulently caused unlawful SNAP redemptions to be transacted through e-Funds and the USDA-FNS SNAP. In so doing, the defendant caused e-Funds to process fraudulent transactions and thereafter cause the Federal Reserve Banking system to wire transfer money. The defendant fraudulently caused the Federal Reserve Bank to wire money to Babylon Grocery & Bakery, through an e-Funds financial

account, to financial accounts controlled by the defendant at US Bank, Pulaski Bank, and PNC Bank respectively, for the benefit of Babylon Grocery & Bakery and the defendant in St. Louis, Missouri, with such money being reimbursement for unlawful SNAP benefits redeemed and transacted by the defendant.

5. It was further part of the scheme that, from on or about January 1, 2008, and continuing through May 30, 2012, Babylon Grocery & Bakery redeemed approximately $2,232,982.06 in SNAP benefits and received the same in federally appropriated money as reimbursements for such illegal redemptions and transactions. In redeeming said SNAP benefits, the defendant made material misrepresentations of fact, both express and implied, to the USDA-FNS and further defrauded the USDA-FNS by permitting customers to purchase non-eligible merchandise and receive cash, and he permitted the purchase of food "on credit."

6. It was further part of the scheme that the defendant, Jalil al-Hanoosh, misrepresented and concealed the true nature of the SNAP transactions he conducted in order to avoid detection and discovery of the scheme, and to permit the continuation of the scheme.

7. On or about September 23, 2013, in the Eastern District of Missouri,

**JALIL AL-HANOOSH**

the defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain signs, signals and sounds, namely a SNAP authorization transaction in the amount of $105.84 from Babylon Grocery & Bakery located in Missouri to e-Funds in Wisconsin.

In violation of, and punishable under, Title 18, United States Code, Sections 1343 and 2.

## COUNT II
### (Wire Fraud)

The Grand Jury further charges that:

1. The Grand Jury re-alleges as if fully set forth herein, all of the allegations of Count I, paragraphs A 1 through 13, B 1 through 15, and C 2 through 6.

2. On or about October 12, 2011, in the Eastern District of Missouri,

### JALIL AL-HANOOSH

the defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain signs, signals and sounds, namely a SNAP authorization transaction in the amount of $229.44 from Babylon Grocery & Bakery located in Missouri to e-Funds in Wisconsin.

In violation of, and punishable under, Title 18, United States Code, Sections 1343 and 2.

## COUNT III
### (Wire Fraud)

The Grand Jury further charges that:

1. The Grand Jury re-alleges as if fully set forth herein, all of the allegations of Count I, paragraphs A 1 through 3, B 1 through 15, and C 2 through 6.

2. On or about May 1, 2012, in the Eastern District of Missouri,

### JALIL AL-HANOOSH

the defendant herein, for the purpose of executing the above-describe scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain signs, signals and sounds, names a SNAP authorization transaction in the amount of $204.17 from Babylon Grocery & Bakery located in Missouri to e-Funds located in Wisconsin.

In violation of, and punishable under, Title 18, United States Code, Sections 1343 and 2.

## COUNT IV
### (Food Stamp Fraud)

12

The Grand Jury further charges that:

On or about September 23, 2013, in the Eastern District of Missouri,

### JALIL AL-HANOOSH

the defendant herein, doing business as Babylon Grocery & Bakery, knowingly used, transferred, acquired, and possessed SNAP/food stamp benefits of a value of $100.00 or more, in a manner not authorized by Chapter 51, Title 7, United States Code, in that $105.84 of USDA SNAP/food stamp benefits were used, transferred, acquired and possessed by the defendant and exchanged for items of value, those being two packs of cigarettes and two rugs, which were not eligible food items and were prohibited by statute and federal regulations governing the SNAP.

In violation of title 7, United States Code, Section 2024(b) and title 18 United States Code, Section 2, and punishable under Title 7, United States Code, Section 2024(b)(1).

### COUNT V
### (Food Stamp Fraud)

The Grand Jury further charges that:

On or about October 12, 2011 in the Eastern District of Missouri,

### JALIL AL-HANOOSH

the defendant herein, doing business as Babylon Grocery & Bakery, knowingly used, transferred, acquired, and possessed SNAP/food stamp benefits of a value of $100.00 or more, in a manner not authorized by Chapter 51, Title 7, United States Code, in that $229.44.84 of USDA SNAP/food stamp benefits were used, transferred, acquired and possessed by the defendant and exchanged for items of value, those being cigarettes, a blanket and an iPhone, which were not eligible food items and were prohibited by statute and federal regulations governing the SNAP.

13

In violation of title 7, United States Code, Section 2024(b) and title 18 United States Code, Section 2, and punishable under Title 7, United States Code, Section 2024(b)(1).

## COUNT VI
### (Food Stamp Fraud)

The Grand Jury further charges that:

On or about May 1, 1012, in the Eastern District of Missouri,

### JALIL AL-HANOOSH

the defendant herein, doing business as Babylon Grocery & Bakery, knowingly used, transferred, acquired, and possessed SNAP/food stamp benefits of a value of $100.00 or more, in a manner not authorized by Chapter 51, Title 7, United States Code, in that $204.17 of USDA SNAP/food stamp benefits were used, transferred, acquired and possessed by the defendant and exchanged for items of value, those being blankets, a set of knives, and cigarettes, which were not eligible food items and were prohibited by statute and federal regulations governing the SNAP.

In violation of title 7, United States Code, Section 2024(b) and title 18 United States Code, Section 2, and punishable under Title 7, United States Code, Section 2024(b)(1).

## FORFEITURE ALLEGATION

The Grand Jury further alleges and finds by probable cause that:

1. Pursuant to Title 18, United States Code, Sections 981(a) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Section 1343 as set forth in Counts 1, II and III, the defendant shall forfeit to the United States of America any property, real or personal, constituting or derived from any proceeds traceable to said offense..

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said offense.

3. Pursuant to Title 7, United States Code, Section 2024(f), upon conviction of an offense in violation of Title 7, United States Code, Section 2024(b) as set forth in Counts IV, V, and VI the defendant shall forfeit to the United States of America all property, real and personal, used in a transaction or attempted transaction, to commit, or to facilitate the commission of, such offense, and all proceeds traceable to such offense.

4. Subject to forfeiture is a sum of money equal to the total value of all property, real and personal, used in a transaction or attempted transaction, to commit, or to facilitate the commission of, such offense, and all property, real or personal, which constitutes or is derived from any proceeds traceable to such offense.

5. Specific property subject to forfeiture includes, but is not limited to, the following:

    a. $36,629.65 seized from PNC Bank , Babylon Grocery & Bakery, Account #4804749867.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty, the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
MATTHEW T. DRAKE, #46499MO
Assistant United States Attorney